**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JORGE ORLANDO ARDILA,
        Petitioner,

        v.                                                    No. 3:09cv1602 (SRU)

UNITED STATES OF AMERICA,
        Respondent.

RULING ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Jorge Orlando Ardila, appearing *pro se*, moves to vacate, set aside, or correct his sentence

pursuant to 28 U.S.C. § 2255.[1]   He alleges several reasons why his trial and appellate lawyer

provided ineffective assistance, in violation of his Sixth Amendment right to counsel.   For the

reasons set forth in this ruling, Ardila's motion is denied.

I.     Background

On November 9, 2004, the government filed a second superseding indictment

against Ardila, alleging the following six charges: (1) conspiracy to possess with intent to

distribute and to distribute 5,000 grams or more of cocaine, in violation of 21 U.S.C. §§

841(a)(1), 841(b)(1)(A), & 846; (2) conspiracy to possess with intent to distribute and to

distribute 1,000 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), &

846; (3) possession with intent to distribute and distribution of heroin on or about March 3, 2002,

in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C); (4) possession with intent to distribute

and distribution of heroin on or about July 1, 2002, in violation of 21 U.S.C. §§ 841(a)(1) &

841(b)(1)(C); (5) possession with intent to distribute and distribution of heroin on or about

August 1, 2002, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C); and (6) possession with

---

[1]  Ardila is sometimes referred to as "Ardilla" in the briefing and in the case caption.   For
the sake of consistency, this ruling will address him as "Ardila," the surname provided in his
criminal case, 3:03cr264 (AHN) (SRU), and the name by which the government refers to the
petitioner, and by which the petitioner refers to himself in his reply brief.   The clerk shall correct
the caption accordingly.

intent to distribute and distribution of heroin on or about June 5, 2003, in violation of 21 U.S.C.

§§ 841(a)(1) & 841(b)(1)(C).   Second Superseding Indictment (3:03cr264 (AHN) (SRU), doc. # 68).   On December 14, 2011, following a seven-day trial, a jury convicted Ardila on each of those counts.   Jury Verdict (3:03cr264 (AHN) (SRU), doc. # 112).   At trial, the government relied on the testimony of law enforcement investigators and cooperating witnesses, as well as consensually recorded conversations between witnesses and Ardila, to prove that Ardila was a major supplier of cocaine and heroin to street-level drug distributors in Bridgeport, Connecticut, including to Frank Estrada's organization, which the government describes as "one of the most prolific, profitable, and violent drug trafficking organizations" in the city's history.   Gov't's Response to Petitioner's Mot. at 3 (doc. # 4).

On October 26, 2005, (now retired) United States District Judge Alan H. Nevas sentenced Ardila to a non-guidelines term of 360 months' imprisonment on counts one and two, and 240 months' imprisonment on counts three through six of the indictment, to be served concurrently. Judge Nevas fined Ardila $25,000, which represented the bottom of his guidelines range; imposed a mandatory $600 special assessment; and sentenced Ardila to five years' supervised release upon the completion of his prison term.   The fine and special assessment were ordered to be paid immediately.   At the time of his sentencing, Ardila was 57 years old.

Ardila's counsel filed a timely appeal, and the Court of Appeals affirmed Ardila's judgment on April 24, 2008.   *United States v. Ardila*, 275 F. App'x 39 (2d Cir. 2008).   Ardila then filed a petition for writ of certiorari with the United States Supreme Court, which was denied on October 6, 2008.   *Ardila v. United States*, 129 S. Ct. 302 (2008) (memorandum).   On that date, Ardila's judgment became final.   *See Clay v. United States*, 537 U.S. 522, 527 (2003).

II.   **Standard of Review**

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."   28 U.S.C. § 2255.   In general, petitioners who have failed to present a claim on direct appeal may not raise that claim on collateral review absent a showing of cause and prejudice.   *Yick Man Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010).  A petitioner may raise a claim of ineffective assistance of counsel, however, even if that claim was not raised previously at trial or on appeal.   *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Yick Man Mui*, 614 F.3d at 57.   Ardila's claims all allege that his counsel at trial and on appeal provided ineffective assistance.   Those claims are properly before the court and will be decided according to the familiar Sixth Amendment standard governing claims of ineffective assistance of counsel.

To succeed on his ineffective assistance claims, Ardila must demonstrate (1) that his counsel's performance "fell below an objective standard of reasonableness," and (2) "that the deficient performance prejudiced the defense."   *Strickland v. Washington*, 466 U.S. 668, 687-91 (1984).   The mere possibility that a particular deficiency might have prejudiced the defendant is not enough.   Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.* at 694.   Moreover, a claim alleging ineffective assistance of appellate counsel on the basis of counsel's failure to raise an issue on appeal will fail unless the petitioner can show "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly

3

weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

### III.   Discussion

Ardila submitted his section 2255 petition to prison authorities on October 5, 2009, and

the petition was postmarked the following day.   Although the court did not receive Ardila's

petition until October 8, 2009, which was two days late under 28 U.S.C. § 2255(f)(1), the court

applies the so-called "mailbox rule" to measure the timeliness of a habeas corpus petition.

According to that rule, "a prisoner appearing *pro se* satisfies the time limit for filing a [petition

for habeas corpus] if he delivers the notice to prison officials within the time specified."   *Noble*

*v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001) (per curiam).   Accordingly, Ardila is deemed to have

filed his petition on October 5, 2009, within the one-year statute of limitations period.   His

petition is therefore timely.

Ardila asserts that his attorney rendered ineffective assistance at trial and on appeal in

violation of his Sixth Amendment right to counsel.   He makes five separate ineffective

assistance claims, each of which I address individually.

### A.  Constructive Amendment of the Indictment

Ardila first argues that his counsel was ineffective for failing to object and appeal on the

basis that the government constructively amended the indictment.   Ardila claims that his

attorney should have objected or appealed because "the trial evidence or the jury charge

operate[d] to 'broaden the possible bases for conviction from that which appeared in the

indictment.'"   *United States v. Milstein*, 401 F.3d 53, 65 (2d Cir. 2005) (quoting *United States v.*

*Miller*, 471 U.S. 130, 138 (1985)).   Ardila does not, and cannot, contest the government's proof

with respect to counts three through six of the indictment, which charge Ardila with selling

heroin at various times in 2002 and 2003.   The government introduced consensual recordings at

trial proving that those transactions took place, and corroborated those recordings with testimony

by cooperating witnesses.   Tr. 12/7/2004 at 36-37 (3:03cr264 (AHN) (SRU), doc. # 135); Tr.

12/8/2004 at 92-118, 170-204 (3:03cr264 (AHN) (SRU), doc. # 136); Tr. 12/10/2004 at 56-86

(3:03cr264 (AHN) (SRU), doc. # 138).   Instead, Ardila claims that the government's proof of his

participation in cocaine and heroin distribution conspiracies was different than what was alleged

in the first two counts of the indictment, and his attorney was ineffective for not challenging that

purported constructive amendment.

Ardila's counsel was not deficient and Ardila was not prejudiced when counsel chose not

to object or appeal on the grounds of constructive amendment to the indictment.   "To prevail on

a constructive amendment claim, a defendant must demonstrate that either the proof at trial or the

trial court's jury instructions so altered an essential element of the charge that, upon review, it is

uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's

indictment. . . . There is no constructive amendment where a generally framed indictment

encompasses the specific legal theory or evidence used at trial."   *Milstein*, 401 F.3d at 65

(quotations omitted).   Moreover, "[i]n determining whether an 'essential element' of the offense

has been modified," the Second Circuit has "consistently permitted significant flexibility in proof,

provided that the defendant was given notice of the 'core of criminality' to be proven at trial."

*United States v. Delano*, 55 F.3d 720, 729 (2d Cir. 1995) (quotation omitted).   Here, there was

no uncertainty that Ardila was convicted of conduct that was covered by the indictment, and

Ardila was given more than sufficient notice of the case the government would present at trial.

At trial, the government's evidence was focused entirely on proving Ardila's possession of

cocaine and heroin with the intent to distribute and, in fact, distributing those drugs to dealers in

Bridgeport, Connecticut.   The most prominent purchaser from Ardila was Frank Estrada, who

ran a large and notorious drug distribution operation in Bridgeport and other parts of the state.

*See generally United States v. Estrada*, 320 F.3d 173, 178-79 (2d Cir. 2003) (describing

Estrada's organization and prosecution of its members).   Several witnesses, including Estrada

himself, linked Ardila to Estrada's drug organization and identified him as Estrada's principal

heroin supplier.   *See* Tr. 12/6/2004 at 97 (3:03cr264 (AHN) (SRU), doc. # 134) (Bridgeport

Police Department Sergeant Juan Gonzalez identifying Ardila as Estrada's principal supplier); *id.*

at 230 (Eddie Lawhorn testifying that "Omar," Ardila's alias, was Estrada's heroin supplier); Tr.

12/7/2004 at 193-94 (Frank Estrada identifying "Omar" as his primary heroin supplier and

testifying that Ardila supplied him with more than 250 kilograms of heroin over the course of

their relationship); Tr. 12/8/2004 at 16-17 (Estrada testifying that "[t]here was no need to get any

heroin from multiple sources because Omar was giving me more than I could ─ I could use").

Luis Estrada separately identified Ardila as the supplier of heroin to David Pacheco, another

Bridgeport narcotics distributor.   Tr. 12/8/2004 at 135.   Juan Rosario and Edwin Gonzalez both

testified that Ardila traveled to regional airports to pick up shipments of heroin smuggled from

Colombia, which Ardila then sold to Bridgeport dealers for street-level distribution.   Tr.

12/9/2004 at 161 (3:03cr264 (AHN) (SRU), doc. # 137); Tr. 12/10/2004 at 225-26.   Multiple

witnesses described the methods Ardila used to conceal his smuggled heroin from law

enforcement.   Tr. 12/7/2004 at 237-42; Tr. 12/9/2004 at 162-65.   Gonzalez also testified that he

bought weekly quantities of heroin, ranging from 10 to 50 grams, from Ardila between

approximately 2000 and 2003.   Tr. 12/10/2004 at 200-02.

Witnesses separately testified that Ardila was involved in importing and distributing large

amounts of cocaine.   Rosario testified about traveling with Ardila to Florida to pick up

shipments of cocaine, and recalled Ardila acquiring ten kilograms of cocaine on a single trip.

Tr. 12/9/2004 at 139.   Rosario also testified about accompanying Ardila on trips to New York to buy large quantities of cocaine.   *Id.* at 144.   Estrada testified that he bought cocaine from Ardila, although Ardila was not his principal supplier.   Over the course of their business relationship, Estrada estimated that he obtained more than 50 kilograms of cocaine from Ardila. Tr. 12/7/2004 at 184.

The government's evidence and theory of liability at trial were consistent with the first two counts of the indictment, which charged Ardila with conspiring to possess with the intent to distribute and to distribute 5,000 grams or more of cocaine and 1,000 grams or more of heroin, respectively.   Ardila argues that the government failed to prove the second count because there was inadequate proof that Ardila's agreement with Daniel Caro and Christopher Carillo to distribute small quantities of heroin was the same conspiracy to distribute heroin to large-scale heroin street dealers, such as Estrada.   In other words, Ardila contends that the second count only indicted him for the specific conspiracy to distribute heroin with Caro and Carillo, and the grander conspiracy that the government proved is not captured within the count.   Ardila's interpretation of the second count, hower, is too parsimonious.   Ardila was charged with conspiring with Caro, Carillo, and "others known and unknown to the Grand Jury," who would have included Estrada, Pacheco, Rosario, Gonzalez, and other participants in the agreement who testified or were identified at trial.   Second Superseding Indictment at 2. The indictment was clear that the government was not seeking to convict Ardila solely on the basis of his transactions with Caro and Castillo, and the proof the government offered at trial was in accord with the grand jury's indictment.

Because the government's case did not amount to a constructive amendment of the indictment, Ardila's counsel neither performed deficiently nor prejudiced his client.   Ardila's

claim fails both *Strickland* prongs.

    B.  <u>Government's Rebuttal Argument Concerning Frank Estrada's Plea Agreement</u>

       Ardila's second claim is that the government improperly bolstered Frank Estrada's

credibility during its rebuttal closing argument.   Ardila claims that the government

disingenuously represented to the jury that Estrada, who pleaded guilty, faced serious penalties

for his crimes notwithstanding his cooperation with Ardila's prosecution.

       During closing argument, Ardila's counsel attacked Estrada's credibility at length.

Ardila's attorney argued, essentially, that the government's case hinged on Estrada, but Estrada

could not be believed.   "This whole case," Ardila's counsel posited, "the idea that there's

hundreds and hundreds of kilos, and all this stuff is really based upon Mr. Estrada, . . . but he's

one of the most despicable human beings that ever — that I've ever seen, and I'm sure you've ever

seen."   Tr. 12/14/2004 at 33 (3:03cr264 (AHN) (SRU), doc. # 140).   He continued:   "If you

treat [Estrada and his ilk] nicely, they're gonna skate right by because they're manipulators and

they're con men, and they've been doing it their entire lives, and they've cut fabulous deals with

the government to try to — so they can walk again, and sell drugs again."   *Id.* at 36.   In rebuttal,

the government argued that Estrada's testimony was corroborated by other evidence; admitted

that Estrada exchanged his testimony for the chance not to be sentenced to life imprisonment;

and urged the jury to examine Estrada's plea and cooperation agreements, which had been

admitted as full exhibits.   *Id.* at 68, 70-72.

       The government's argument was appropriate, and Ardila's counsel was not deficient for

electing not to object or appeal the prosecution's rehabilitation of Estrada's credibility.   "The

prosecution and the defense are generally entitled to wide latitude during closing arguments, so

long as they do not misstate the evidence. "   *United States v. Tocco*, 135 F.3d 116, 130 (2d Cir.

1998).   "Under the 'invited response' doctrine, 'defense argument may, in a proper case, 'open

the door' to otherwise inadmissible prosecution rebuttal.' . . . This is because prosecutors must be

allowed to offer 'legitimate responses' to defense arguments raised during summation."   *United*

*States v. Ozsusamlar*, 349 F. App'x 610 (2d Cir. 2009) (unpublished summary order) (quoting

*United States v. Rivera*, 971 F.2d 876, 883 (2d Cir. 1992)).   In this case, Ardila's counsel

broached the issue of Estrada's credibility, and the government was within its right to respond.

The government did not misstate the effect of Estrada's cooperation on his sentence.   On the

contrary, the prosecutors encouraged the jury to "look at [the plea and cooperation] agreements

and review them carefully," Tr. 12/14/2004 at 68, and acknowledged that, in exchange for his

testimony, Estrada would not face the death penalty and could potentially receive a sentence of

less than life imprisonment.   The government did not argue for the jury to draw any inferences

not permitted by the evidence.

Ardila's counsel also did not prejudice his client by choosing not to object or appeal this

issue.   Indeed, Ardila was highly unlikely to have prevailed by objecting or appealing.   "An

improper remark by a prosecutor will justify a reversal [of conviction] only if it causes the

defendant substantial prejudice by so infecting the trial with unfairness as to make the resulting

conviction a denial of due process. . . . The statements must amount to flagrant abuse . . . causing

substantial prejudice."   *United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005) (quotations

omitted).   Because the government did not misstate the terms of Estrada's cooperation with the

government, and in light of the strength of the government's other evidence against Ardila, the

government's closing argument did not substantially prejudice Ardila.   Ardila would not have

been entitled to strike the government's rebuttal argument pertaining to Estrada's cooperation,

much less secure a new trial, had his attorney objected or appealed.   There is therefore no

reasonable probability that the outcome of his proceeding would have been different had Ardila's

counsel performed as he wished.

    C.  <u>Government's Conflicting Theories in Different Proceedings</u>

       Ardila next argues that his attorney was ineffective for failing to object to or appeal the

government's conflicting theories in his case and the earlier prosecution of Frank Estrada and his

associates.   Ardila claims that, in Frank Estrada's prosecution, Ardila was never identified as

Estrada's point of supply, and the government instead claimed that Estrada was supplied by

wholesalers in New York.   According to Ardila, that amounted to a due process violation, and

his counsel's failure to object or appeal on that basis constituted ineffective assistance.

       In support, Ardila cites *Stumpf v. Mitchell*, 367 F.3d 594 (6th Cir. 2004), *vacated on other*

*grounds*, 545 U.S. 175 (2005), where the court held that the government's "use of inconsistent,

irreconcilable theories to convict two defendants for the same crime is a due process violation."

*Id.* at 611; *accord Thompson v. Calderon*, 120 F.3d 1045, 1058 (9th Cir. 1997) (en banc)

(plurality opinion) ("[I]t is well established that when no new significant evidence comes to light

a prosecutor cannot, in order to convict two defendants at separate trials, offer inconsistent

theories and facts regarding the same crime.").   "The Second Circuit has not decided whether ─

or on what basis ─ the government may be barred from advancing factually inconsistent theories

in different criminal trials."   *United States v. D'Amico*, 734 F. Supp. 2d 321, 352 (S.D.N.Y.

2010).   Nevertheless, even if the court were to apply the *Stumpf* test, Ardila would not have been

entitled to any relief had his attorney objected or appealed.

       There are at least three problems with Ardila's claim, each of which is fatal.   First, there

is no inconsistency or irreconcilability between his case and Estrada's prosecution.   During his

cross-examination at Ardila's trial, Estrada admitted that people other than Ardila supplied him

with drugs and that Ardila was Estrada's principal source of heroin, but not cocaine.   Tr.

12/8/2004 at 14-23.   Furthermore, the government proved the existence of the conspiracy with

evidence unrelated to Ardila's supply of drugs to Estrada.   During closing argument, the

prosecution argued that the testimony of Juan Rosario and Edwin Gonzalez, who both told the

jury that Ardila regularly supplied them with large amounts of drugs, was independently

sufficient to convict Ardila of counts one and two of the indictment.   12/14/2004 at 26-27.   It is

not factually contradictory to say that Estrada was supplied by multiple wholesalers, including

Ardila, or that Ardila was involved in a conspiracy to distribute cocaine and heroin to multiple

drug dealers in Bridgeport, including but not limited to Estrada, during the relevant dates.   At

most, Ardila has alleged an "arguable tension" between the positions the government took in

Estrada's case and his own.   He has not "demonstrated that the government's theories . . . are

categorically inconsistent," however, and therefore cannot prove a due process violation.

*D'Amico*, 734 F. Supp. 2d at 356 (quotation omitted).

Second, *Stumpf* only applies in cases where the government has used irreconcilable

theories "to convict two defendants for the same crime."   367 F.3d at 611.   Ardila does not cite

anyone else whom the government convicted of the exact same conspiracy to distribute cocaine

and heroin.   Nor could Ardila make such a showing: Ardila's agreement to supply cocaine and

heroin at wholesale in Bridgeport was a conspiracy distinct from Estrada's operation to distribute

those drugs at retail.   Even though there was evidence introduced showing that Ardila regularly

sold drugs to Estrada, those same acts could have been used to prove separate conspiracies

against Ardila and Estrada because "[n]othing dictates that a single crime cannot be committed

by two enterprises working together, each in furtherance of its own interests."   *United States v.

Boyle*, 283 F. App'x 825 (2d Cir. 2007) (unpublished summary order).   In other words, although

Ardila and Estrada worked together, the government did not allege they were members of the same overarching conspiracy.

Third, to the extent that Ardila claims that the government previously convicted Edward Estrada, Frank Estrada's brother, of principally supplying Frank Estrada with narcotics, that argument is simply factually erroneous.   Edward Estrada was Frank Estrada's lieutenant, and not his supplier.   *See Estrada v. United States*, No. 3:09cv1561 (SRU), 2011 WL 2457555, at *1 (D. Conn. June 16, 2011) (describing Frank Estrada as "the leader of the distribution ring," of which Edward Estrada was a member).   Because the government did not attempt to convict two defendants for the same crime, Ardila cannot demonstrate a due process violation.

Last, unlike in *Stumpf*, the government learned relevant facts about Ardila only after Estrada was indicted and pled guilty.   Any change in the government's theory regarding who supplied Estrada is explained by the timing of when it acquired incriminating evidence against Ardila.   At Ardila's trial, the government submitted evidence explaining the shift in its position between the Estrada and Ardila prosecutions.   For example, Sergeant Juan Gonzalez of the Bridgeport Police Department stated that, when he had previously testified before a grand jury in the Estrada case, he did not know Ardila was Estrada's primary supplier.   Gonzalez only discovered Ardila's role after several drug traffickers, including Frank Estrada, agreed to cooperate with government investigators following Estrada's arrest and indictment.   Tr. 12/6/04 at 97 (3:03cr264 (AHN) (SRU), doc. # 134).   As the *Stumpf* Court acknowledged, the government is permitted to pursue a different theory of liability against a defendant based on newly learned information "to the extent that it is meant to acknowledge a state's need to continue to investigate crimes and present all available evidence in court."   367 F.3d at 616 (discussing *Thompson*, 120 F.3d at 1058).   By the same token, the government was permitted to

prosecute Ardila in reliance on evidence acquired only after Estrada pled guilty and agreed to cooperate.

For those reasons, Ardila would not have been able to mount a successful due process challenge, assuming that the court recognized the rule announced in *Stumpf*.   Ardila's counsel was neither deficient nor prejudicial in deciding to forgo objections or an appeal on that ground.

D.   Multiple Conspiracies Charge

Ardila claims that his counsel was ineffective for failing to appeal the district court's decision not to give a so-called "multiple conspiracies" charge.   "A multiple conspiracies charge is designed to assist the jury in determining whether or not a particular charged conspiracy was truly a 'single conspiracy,' not to remind them separately to consider each charged conspiracy." *United States v. Aguilar*, 352 F. App'x 522 (2d Cir. 2009) (unpublished summary order) (citing 1 Sand, et al., Modern Federal Jury Instructions─Criminal ¶ 19.01).   In other words, a multiple conspiracies charge would have been appropriate to prevent juror confusion whether the conspiracies to distribute cocaine and heroin charged in the indictment were each a single conspiracy or were, instead, multiple conspiracies.   "Generally speaking, the instruction is appropriate in cases where a number of defendants have been collectively charged in the indictment with participation in a single, overall conspiracy, but there is a basis for the defense claim that multiple conspiracies existed."   Sand ¶ 19.01 Instruction 19-5 & cmt. at 19-22.

Ardila's claim of ineffective assistance fails because the court, in fact, gave a multiple conspiracies charge to the jury.   The court gave the following instruction:

> Now, in this case the defendant contends that the government's proof fails to show the existence of only one overall conspiracy.   Rather, he claims that there were actually several separate and independent conspiracies with various group members.

> Whether there existed a single unlawful agreement, or many such agreements, or indeed no agreement at all, is a question of fact for you, the jury, to determine.
>
> As I explained to you, when two or more people join together to further one common unlawful design or purpose, a single conspiracy exists. By way of contrast, multiple conspiracies exist when there are separate unlawful agreements to achieve a distinct purpose.
>
> You may find that there was a single conspiracy, despite the fact that there were changes in either personnel or activities, or both, so long as you find that some of the coconspirators continued to act for the entire duration of the conspiracy, for the purposes charged in the superseding indictment. The fact that the members of a conspiracy are not always identical does not necessarily imply that separates [*sic*] conspiracies exist.
>
> On the other hand, if you find that the conspiracy charged in the superseding indictment did not exist, you cannot find the defendant guilty of any conspiracy charged in the indictment. This is so, even if you find that some conspiracy other than the one charged in the superseding indictment existed, even though the purposes of both conspiracies may have been the same, and even though there may have been some overlap in membership.
>
> Similarly, if you find that the defendant was a member of another conspiracy, and not he one charged in the superseding indictment, then you must acquit him of the conspiracy charge.
>
> Therefore, what you must do is determine whether the conspiracy charged in the superseding indictment existed. If it did, then you must determine the nature of the conspiracy; that is, whether it existed as a single conspiracy or multiple conspiracies, and whether the defendant was a member.

Tr. 12/14/2004 at 129-30; *cf.* Sand ¶ 19.05, instruction 19-5 (providing nearly identical language for model multiple conspiracies charge).

Because the court gave a multiple conspiracies charge, there was no issue for Ardila's counsel to appeal. Ardila cannot claim ineffective assistance on this ground.

E.    Fine Imposed

Finally, Ardila argues that counsel was ineffective at sentencing for failing to file a financial affidavit on his behalf. According to Ardila, had such an affidavit been submitted,

14

there is a reasonable probability that the Court would not have imposed the $25,000 fine against

him.   At sentencing, Ardila's counsel admitted that the absence of a financial affidavit "may

have been an oversight," and asked the court to reconsider the fine it imposed because Ardila was

"just going to work within the facility, and maybe the family can provide some funds and it

would limit that ability for him to access that, and I think it would make his life more difficult

within prison."   Sentencing Tr. at 54 (3:03cr264, doc. # 182).   Ardila's counsel also noted that

he had been appointed because his client was indigent, which was probative of his inability to

pay a fine.   *Id.*   Because no financial affidavit was submitted, the court denied Ardila's oral

motion to reconsider the fine.   *Id.* at 55.

Among the factors that a court must consider when determining whether to impose a fine

is "the defendant's income, earning capacity, and financial resources."   18 U.S.C. § 3572(a)(1).

The United States Sentencing Guidelines further provide that "[t]he court shall impose a fine in

all cases, except where the defendant establishes that he is unable to pay and is not likely to

become able to pay a fine."   U.S. Sentencing Guidelines Manual § 5E1.2(a) (2005).   "Evidence

of present indigence by itself, however, is not an absolute barrier to the imposition of a fine. . . .

On the contrary, a fine may be imposed on a defendant who is presently indigent if the record

contains evidence of his capacity to pay the fine from prison earnings . . . or from earnings after

his release from prison."   *United States v. Thompson*, 227 F.3d 43, 45 (2d Cir. 2000) (citations

omitted).   At sentencing, "the defendant bears the burden to show indigence that will avoid

imposition of a fine."   *United States v. Corace*, 146 F.3d 51, 56 (2d Cir. 1998).   Thus, it was the

burden of Ardila's counsel to present the court with information showing that his client was

unable to pay a fine.   I will assume, without deciding, that counsel's failure to provide a financial

affidavit constituted deficient performance within the meaning of *Strickland*'s first prong.

On the other hand, it is Ardila's burden to submit evidence showing that counsel's error

prejudiced him, thereby entitling Ardila to habeas relief.   *See Wong v. Belmontes*, 130 S. Ct.

383, 390-91 (2009) (per curiam) ("*Strickland* places the burden on the defendant, not the State, to

show a 'reasonable probability' that the result would have been different.").   The government

argues that Ardila's motion must be denied because Ardila has not come forward with proof that

he is unable to pay the fine.   In other words, there is no evidence supporting the conclusion that

Ardila was prejudiced by counsel's omission of a financial affidavit.   Because the court lacks

any knowledge of Ardila's financial information, I cannot hold that there is a reasonable

probability that, but for counsel's deficient performance, Ardila would have received a lesser fine

or no fine at all.   *See Lauria v. United States*, Nos. 3:96cr185 (PCD), 3:01cv1893 (PCD),

3:01cv1894 (PCD), 2006 WL 3704282, at *14 (D. Conn. Dec. 13, 2006) (noting that petitioner

had failed to include a financial affidavit demonstrating his indigence, and holding that,

"[b]ecause there has been no showing that the result of the proceeding would have been different

had [counsel] submitted a financial affidavit at the time of sentencing, this claim fails").

Ardila's motion is denied because he has not met his burden to prove *Strickland*'s second prong.

Under Rule 59(e) of the Federal Rules of Civil Procedure, Ardila may move for

reconsideration of decision on this issue, with a full financial affidavit, within 28 days of the

entry of judgment.   In order to ensure that Ardila has sufficient time to create such a financial

affidavit, judgment in this case shall not enter until August 27, 2012.   Ardila's financial affidavit

must include not only the records of his prison bank accounts, but must show his entire financial

state, including any monies held in bank accounts, personal and real property held, and any other

16

assets or liabilities.[2]

## IV.   Conclusion

For the reasons set forth above, Ardila has failed to demonstrate that he was

provided ineffective assistance of counsel in violation of his Sixth Amendment right.   Ardila's

motion to vacate, set aside, or correct his sentence (doc. # 1) is DENIED.

It is so ordered.

Dated at Bridgeport, Connecticut, this 17th day of August 2012.


/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge

---

[2] On March 13, 2009, Ardila moved to modify his fine pursuant to 18 U.S.C. §
3572(d)(3) (3:03cr264 (AHN) (SRU), doc. # 246), which I denied without prejudice (3:03cr264
(AHN) SRU), doc. # 248).   Although I need not decide this matter now, I note that Ardila likely
cannot modify his sentence under section 3572(d)(3).   That subsection deals with "[a] judgment
for a fine which permits payments in installments."   18 U.S.C. § 3572(d)(3).   Because Ardila's
fine was ordered payable immediately, and not in installments, section 3572(d)(3) is likely not
applicable.   *See Baez v. United States*, No. 3:02cv68 (AHN), 2007 WL 638198, at *3 (holding
that, because petitioner's fine "was due and payable immediately," he was not entitled to relief
under section 3572(d)(3), notwithstanding that he was "paying his fines in increments through the
[Inmate Financial Responsibility Program]").